**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RONNIE MONEY COLEMAN,

    Plaintiff

v.

JOHN EROGUL, et. al.,

    Defendants

Case No.: 3:17-cv-00649-MMD-WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 91

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 91, 91-1 to 91-13, 93-1 to 93-4, errata at ECF Nos. 96, 96-1, 96-2.) Plaintiff filed a response. (ECF No. 98.) Defendants filed a reply. (ECF No. 99.) Plaintiff filed a sur-reply. (ECF No. 101.)[1]

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 5.) The

---

[1] Defendants were ordered to file supplemental briefing; however the supplements (ECF Nos. 114, 116) relate to Count II, which has been dismissed; therefore, the court has not considered the supplements in connection with this Report and Recommendation. In addition, Local Rule 7-2 contemplates the filing of a motion, response, and reply. Sur-replies are not permitted without leave of court, and are discouraged. Plaintiff did not seek leave of court to file his sur-reply; therefore, the court has not considered the sur-reply.

events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP). (*Id.*)

The court screened Plaintiff's amended complaint, and allowed him to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim in Count I against Noreen Borino, Patrick Moreda, Dr. Richard Wulff, Dr. John Erogul, and a Doe HDSP medical staff member (when he learns that person's identity). In addition, he was allowed to proceed with a due process claim in count II against a Doe administrator from NNCC (again, when he learns that person's identity). (Screening Order, ECF No. 6.)

Plaintiff moved to dismiss Dr. John Erogul as a defendant, and his motion was granted. (ECF Nos. 86, 97.) Dr. Borino was dismissed without prejudice for lack of service under Federal Rule of Civil Procedure 4(m). (ECF No. 102.) Plaintiff also moved to dismiss Count II without prejudice, and the motion was granted. (ECF Nos. 121, 122.) Since Plaintiff has yet to identify the Doe HDSP medical staff member in Count I, this person should be dismissed without prejudice. Therefore, this action is currently only proceeding with the Eighth Amendment claim in Count I against Patrick Moreda and Dr. Richard Wulff.

Plaintiff alleges that on August 4, 2016, he was seen by Ely State Prison (ESP) medical personnel for a broken right hand. He was sent to an outside doctor, Dr. Jensen, for treatment. Dr. Jensen x-rayed Plaintiff's hand, gave him two shots, set his right pinky knuckle, and sent Plaintiff back to ESP with instructions to return later for more x-rays to ensure the knuckle was properly set. He alleges that instead, he was transferred immediately to HDSP. ESP placed a medial referral in Plaintiff's medical file for Dr. Wulff to examine Plaintiff on arrival at HDSP. Plaintiff alleges that he was not seen by any medical personnel upon arrival at HDSP. He further claims that a false document was placed in his file showing that Dr. Borino examined him upon

1   arrival at HDSP. He did not have his personal property, so he was unable to kite medical about

2   the issue until August 23, 2016. The kite was ignored by John/Jane Doe HDSP medical

3   personnel. Medical pill call personnel also ignored his medical requests.

4          On September 22, 2016, he wrote an emergency grievance, which Moreda denied. In an

5   effort to get medical care, Plaintiff refused to come out of the showers until he was promised an

6   appointment; however, such appointment did not occur. He avers that his hand healed with the

7   bone in the wrong position. Dr. Wulff finally saw Plaintiff in November of 2016, and Plaintiff

8   then required surgery to re-break the hand, re-set and cast it, in June 2017. He also claims that

9   the recommended physical therapy was not allowed.

10          Defendants move for summary judgment, arguing they were not deliberately indifferent

11  to Plaintiff's serious medical needs, and that they are entitled to qualified immunity.

12                                    **II. LEGAL STANDARD**

13          The legal standard governing this motion is well settled: a party is entitled to summary

14  judgment when "the movant shows that there is no genuine issue as to any material fact and the

15  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*

16  *v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the

17  evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

18  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome

19  of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary

20  judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

21  other hand, where reasonable minds could differ on the material facts at issue, summary

22  judgment is not appropriate. *Anderson*, 477 U.S. at 250.

23

1        "The purpose of summary judgment is to avoid unnecessary trials when there is no

2   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

3   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

4   of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

5   U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that

6   one party must prevail as a matter of law"). In considering a motion for summary judgment, all

7   reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

8   *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach*

9   *& Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the

10  nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

11  477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and

12  determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255;

13  *Anderson*, 477 U.S. at 249.

14       In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

15  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

16  come forward with evidence which would entitle it to a directed verdict if the evidence went

17  uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing

18  the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

19  *Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

20  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

21  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

22  an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving

23

1  party cannot establish an element essential to that party's case on which that party will have the

2  burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

3       If the moving party satisfies its initial burden, the burden shifts to the opposing party to

4  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

5  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

6  dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute

7  be shown to require a jury or judge to resolve the parties' differing versions of truth at trial."

8  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

9  (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment

10  by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475

11  U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

12  pleadings and set forth specific facts by producing competent evidence that shows a genuine

13  dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

14  **III. DISCUSSION**

15  **A. Eighth Amendment Deliberate Indifference to Serious Medical Need Standard**

16       A prisoner can establish an Eighth Amendment violation arising from deficient medical

17  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

18  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the

19  examination of two elements: "the seriousness of the prisoner's medical need and the nature of

20  the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992),

21  *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also*

22  *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091,

23  1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition

1  could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

2  *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104);  *see also Akhtar*, 698 F.3d at 1213.

3  Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or

4  patient would find important and worthy of comment or treatment; the presence of a medical

5  condition that significantly affects an individual's daily activities; or the existence of chronic and

6  substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131

7  (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was

8  wired shut for several months demonstrated a serious medical need).

9       If the medical need is "serious," the plaintiff must show that the defendant acted with

10  deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

11  omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

12  1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

13  even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

14  under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

15  when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

16  official must both be aware of the facts from which the inference could be drawn that a

17  substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

18  511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

19       Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally

20  interfere[s] with medical treatment, or it may be shown by the way in which prison officials

21  provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

22  quotation marks and citation omitted).

23

1      Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that

2  the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

3      "A difference of opinion between a physician and the prisoner—or between medical

4  professionals—concerning what medical care is appropriate does not amount to deliberate

5  indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

6  Instead, to establish deliberate indifference in the context of a difference of opinion between a

7  physician and the prisoner or between medical providers, the prisoner "'must show that the

8  course of treatment the doctors chose was medically unacceptable under the circumstances' and

9  that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's

10  health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

11  **B. Evidence and Argument**

12      Plaintiff was involved in an inmate-on-inmate altercation on August 4, 2016.

13  (ECF No. 91-1 at 2.) Medical staff determined that Plaintiff had a possible fractured right hand,

14  and he was escorted to wait for further medical treatment. (*Id*. at 3.) After the fight, Plaintiff was

15  transferred to William Bee Ririe Hospital with complaints of severe pain to the right hand and

16  possible fracture. (ECF No. 93-2 at 7.) He saw Dr. Jensen. It was noted Plaintiff had two prior

17  injuries (fractures) to the same hand. An x-ray was taken of the right hand and Plaintiff was

18  assessed with a closed, nondisplaced and mildly angulated fracture of the neck of the fifth

19  metacarpal of the right hand. He was given a digital nerve block on the right little finger, and a

20  fracture reduction was performed with splinting. He was discharged in good and improved

21  condition, and there was an instruction to follow up with an orthopedic surgeon for post-

22  reduction x-rays. (ECF No. 93-1.)

23

1    Plaintiff was transferred to HDSP on August 5, 2016, with a notation that he had a

2  fracture of the right hand and he needed to "see ortho today," and there is another order that says

3  he should follow up with an orthopedic provider "today or ASAP." (ECF No. 91-3 at 2, 6; ECF

4  No. 93-2 at 7.) There was an order that day for a post-reduction x-ray of the right hand. (ECF

5  No. 93-2 at 6.) Plaintiff's medical records show that he was seen on August 5, 2016. His vitals

6  were taken. It was noted that he had been seen in the trauma room for evaluation for the fifth

7  metacarpal fracture. There is another notation that he was to see orthopedic that day, and that he

8  had come from ESP for an x-ray. On August 9, 2016, he was seen during pill call. The left hand

9  was wrapped with an elastic bandage. He had no complaints of pain at that time and was not in

10 distress. (ECF No. 93-2 at 4.)

11    On August 23, 2016, Plaintiff sent a kite stating that he wanted to get his hand x-rayed to

12 confirm whether it was healing in the proper place. In response he was told he was scheduled and

13 would be notified the day of his appointment. (ECF No. 91-5 at 7; ECF No. 96-2 at 7.)

14    On September 21, 2016, Plaintiff submitted an emergency grievance stating that he was

15 sent to HDSP from ESP based on a doctor's recommendation that his broken hand should be x-

16 rayed to make sure it was healing in the proper place to avoid deformity, and had been waiting

17 for the x-ray since August 5, 2016. He asked for the x-ray to occur as soon as possible. Moreda

18 responded the same day that it was not an emergency under AR 740, and there is also a notation

19 in the response that HDSP medical nurse Michael was contacted and said Plaintiff had a doctor's

20 appointment. (ECF No. 91-5 at 24; ECF No. 96-2 at 25.) Progress notes from September 22,

21 2016, state that Moreda called about Plaintiff submitting a grievance about his hand and wanting

22 to see a doctor for an x-ray. The note goes on to state that there was an email to place Plaintiff

23 for the next available appointment to be seen by Dr. Wulff. (ECF No. 93-2 at 4.)

Plaintiff submitted an informal level grievance, number 20063035206, on September 22, 2016, stating that he had been at HDSP since August 5, 2016, waiting to have his hand x-rayed to make sure his broken knuckle was healing in the proper place to avoid deformity, as the doctor in Ely had recommended should happen on August 5, 2016. (ECF No. 91-5 at 13; ECF No. 96-2 at 5.) The informal level grievance was upheld, stating that Plaintiff was scheduled to be seen by the orthopedic surgeon on August 19, 2016, but for some reason he was not seen. He was advised he would be scheduled for the upcoming clinic. (ECF No. 91-5 at 14; ECF No. 96-2 at 6.)

Plaintiff's hand was x-rayed again on September 23, 2016. (ECF No. 98 at 3:1-2.) It is not clear what the x-ray showed at that time.

Progress notes from October 24, 2016, state that Plaintiff was rescheduled for Dr. Wulff's next clinic as he was not seen when scheduled on August 19, 2016. (ECF No. 93-2 at 4.)

More imaging of his right hand was done on November 18, 2016, which revealed continued healing of boxer's fracture of the fifth metatarsal. (ECF No. 93-2 at 8.) On November 18, 2016, Plaintiff saw Dr. Wulff, who referred him to a hand specialist. (ECF No. 93-2 at 6; ECF No. 93-3.)

There is a notation on December 19, 2016, indicating that Plaintiff had been scheduled with the hand specialist, Dr. Taylor. (ECF No. 93-2 at 6.)

Even though Plaintiff's informal level grievance was upheld, he submitted a first level grievance stating on August 4, 2016, the doctor pushed his knuckle in the wrong position, and if he had been timely seen it would have been discovered and addressed before his hand healed in the wrong spot. (ECF No. 91-5 at 4; ECF No. 96-2 at 4.) The response states that according to Plaintiff's records, he was involved in an altercation with another inmate at ESP on

August 4, 2016. On August 5, 2016, he was seen, evaluated and treated, and the risks of the

procedure and alternatives were explained and medication was prescribed in the emergency

department, and Plaintiff was then transported and admitted at the HDSP infirmary. Then, on

November 18, 2016, Plaintiff was evaluated, examined, and given recommendations, and the

benefits and risks of the contemplated surgical procedure were explained; his treatment was

ongoing, and he would be brought back to HDSP for the contemplated surgery and would

undergo physical therapy of the hand that is involved if needed. (ECF No. 91-5 at 3.; ECF No.

96-2 at 3)

In his second level grievance dated March 26, 2017, Plaintiff said that he was scheduled

to be seen by the orthopedist on August 19, 2016, while his hand was still broken, but that did

not happen and it caused him to be disabled. (ECF No. 91-5 at 2; ECF No. 96-2)

A progress note from March 20, 2017, indicates that Plaintiff was scheduled to see

Dr. Taylor. (*Id.*) There is an order that same date that Plaintiff should return to HDSP for care of

the right hand, and to check on the appointment with the hand specialist. (ECF No. 93-2 at 6.)

There is an order for hand therapy and follow up with Dr. Eisenhauer in two weeks on

July 11, 2017. (ECF No. 93-2 at 5.)

Plaintiff saw Jeremy Dyer at Tahoe Fracture & Orthopedic on July 24, 2017, for a follow

up indicating he had undergone a corrective osteotomy of the fifth metacarpal shaft on

July 11, 2017. He reported he was doing tolerably well, his pain was getting a little better, and he

was doing well with rotation. There was still some contracture of the PIP joint. He had no

numbness or tingling. X-rays on that date indicated that the hardware was in good position and

alignment. It was decided that Plaintiff would begin motion exercises for the finger, but would

1   not use the finger. He was given a removable splint to be worn for two weeks. (ECF No. 93-4 at

2   2-3.)

3          Defendants argue that they were not deliberately indifferent to Plaintiff's serious medical

4   needs because Plaintiff was seen on arrival at HDSP and given advise and recommendations and

5   informed of the benefits and risks of surgery; Moreda responded to Plaintiff's emergency

6   grievance that it was not an emergency and he was already scheduled for an appointment; he was

7   seen by Dr. Wulff and had follow up x-rays, was referred to a hand specialist and surgery was

8   performed; and, any issues with failing to obtain physical therapy were the result of Plaintiff not

9   following the clear motion instructions given.

10          Plaintiff maintains that he did not see any medical personnel upon arriving to HDSP.

11   (Coleman Aff., ECF No. 98 at 13 ¶ 1.) He insists that the document in his file that he was seen

12   by Dr. Borino[2] is a fabrication. (*Id.* ¶¶ 7-9.) He asserts that even if she did examine him, she

13   ignored the referral to the orthopedist for x-rays. He sent a kite on August 23, 2016, and was told

14   he was scheduled and would be notified the day of his appointment. (ECF No. 98 at 15 ¶ 5, 18 at

15   ¶¶ 2-4.) He made additional efforts to be seen by medical to no avail, and on September 22,

16   2016, he submitted his emergency grievance, which was denied by Moreda. (*Id.* at 15-16 ¶¶ 6-9.)

17   Plaintiff asserts that Moreda's statement about contacting Nurse Michael was added in later and

18   is fabricated, and that his copy of the emergency grievance went missing from HDSP. (*Id. at* 20

19   ¶ 6.) Plaintiff claims that his hand healed in the wrong place. He had more x-rays on

20   September 23, 2016, but nothing followed. (*Id.* at 18 ¶¶ 7, 9.) He saw Dr. Wulff in November of

21   2016, and he had to have his hand re-broken, re-set in surgery, and was placed in a cast by an

22

---

23   [2] Plaintiff makes several arguments about Dr. Borino being deliberately indifferent; however,
     Dr. Borino was subsequently dismissed for lack of service. (ECF No. 102.0

11

1  outside provider, Dr. Eisenhauer.  Dr. Eisenhauer recommended physical therapy, which Plaintiff

2  claims was not allowed. He argues that there were three referrals to Dr. Wulff that put him on

3  notice of Plaintiff's serious medical need.

4  **C. Analysis**

5      Moreda's only involvement was responding to Plaintiff's emergency grievance that said

6  he had been waiting for an x-ray since he arrived at HDSP. Moreda argues that he said it was not

7  an emergency under AR 740, but he also contacted the nurse who said that Plaintiff had a

8  doctor's appointment. Plaintiff claims that the later statement was added after the fact; however,

9  that statement is corroborated by the progress notes. Taking the facts in the light most favorable

10  to Plaintiff, Moreda simply responded to Plaintiff's emergency grievance by stating that it was

11  not an emergency under AR 740. This, in and of itself, does not rise to a denial of medical care

12  and deliberate indifference because under AR 740 an inmate may file a grievance starting at the

13  informal level when the grievance is deemed to not be an emergency. (ECF No. 91-7 at 15.)

14  Plaintiff did just that, when he filed his informal level grievance reiterating his claim the very

15  next day. (ECF No. 91-5 at 23.) Therefore, summary judgment should be granted in favor of

16  Moreda.

17      With respect to Dr. Wulff, he saw Plaintiff on November 18, 2016, some three and a half

18  months after Plaintiff had arrived at HDSP, and three months after Plaintiff had apparently not

19  been seen for the August 19, 2016 appointment that had been scheduled. To be actionable under

20  the Eighth Amendment, a delay in receiving medical treatment must have led to further injury.

21      Defendants provide no explanation for the delay in obtaining the x-ray, particularly when

22  the instructions were clear that Plaintiff was to be seen the next day for another x-ray. Nor do

23

1   Defendants provide an explanation for the delay between the time it was discovered that Plaintiff

2   had not been seen on August 19, and his being seen by Dr. Wulff in November.

3          Defendants argue that Plaintiff has no claim, but there is evidence that he did suffer harm

4   as a result of the delay: Plaintiff asserts, and Defendants do not dispute, that his hand healed in

5   the incorrect position, and he had to have his hand re-broken, have surgery to re-set the hand, and

6   then it was placed in a cast again. Defendants rely on the fact that Plaintiff was seen on arrival at

7   HDSP, but this does not account for the fact that the post-reduction x-rays recommended by the

8   emergency physician were not performed, and the referral to the orthopedic specialist did not

9   occur. Thus, there is evidence that Plaintiff suffered further injury as a result of the delay.

10          Dr. Wulff also argues that he is entitled to qualified immunity.

11          The qualified immunity analysis consists of two steps: (1) viewing the facts in the light

12   most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the

13   right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*,

14   833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

15          It was clearly established in 2016 that deliberate indifference to a serious medical need

16   exists when there is a denial of medical treatment or delay of medical treatment that leads to

17   further injury. *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2018), *McGuckin*, 974 F.2d at

18   1060. In addition, taking the facts in the light most favorable to Plaintiff, Dr. Wulff ignored

19   and/or delayed Plaintiff's need for medical care which resulted in his hand healing in the wrong

20   position, which then required that his hand be re-broken, and re-set in surgery. Therefore, Dr.

21   Wulff is not entitled to qualified immunity.

22          For these reasons, the motion for summary judgment should be denied as to Dr. Wulff.

23

13

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DISMISSING WITHOUT PREJUDICE** the Doe HDSP medical staff member; and

(2) **GRANTING** the motion for summary judgment (ECF No. 91) as to Moreda and **DENYING** it as to Dr. Wulff.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 17, 2020

_William G. Cobb_
William G. Cobb
United States Magistrate Judge